**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| RICARDO HAYES,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF CHICAGO and<br>OFFICER KHALIL MUHAMMAD,<br><br>        Defendants. | Case No.: |

## COMPLAINT

For his Complaint against the City of Chicago and Officer Khalil Muhammad, Ricardo Hayes states and alleges as follows:

## INTRODUCTION

1.     Ricardo Hayes ("**Ricky**") is a young African American male who suffers from intellectual and developmental disabilities. Early in the morning on August 13, 2017, Ricky was harmlessly skipping and running around his neighborhood. He was unarmed and not engaged in any criminal activity. Ricky was spotted by Officer Khalil Muhammad, who was off-duty and driving his own truck. Officer Muhammad aggressively chased Ricky in his truck pulling up onto the sidewalk. Startled by Office Muhammad, Ricky ran away, but then stopped, and stood in the front yard of a nearby house. Officer Muhammad drove to the house where Ricky was standing, and stopped his truck in the middle of the street approximately 20 feet from Ricky. Ricky did not move; he stood with his hands at his sides facing Officer Muhammad's truck.

1

While still sitting in his truck, Officer Muhamad opened fire on Ricky, hitting Ricky multiple times.

2.    When Officer Muhammad later called 911 to send an ambulance for Ricky he stated that he was forced to shoot because Ricky had "walked-up" on his car and tried to pull a gun. Officer Muhammad lied. The shooting was captured on video by a near-by security camera. Ricky did not approach Officer Muhammad and did not have a gun.

3.    Officer Muhammad attacked Ricky. His conduct was unjustified and a violation of the law.

4.    Almost a year after the shooting, the Chicago Police Department and the City of Chicago have not found that the shooting was unjustified, and, upon information and belief, Officer Muhammad is still a member of the Chicago police force.

## JURISDICTION AND VENUE

5.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of Ricky's rights as secured by the United States Constitution.

6.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

7.    Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2), because all acts giving rise to Ricky's claims occurred in the Northern District of Illinois and defendants reside in this district.

**PARTIES**

8.      Ricky is a resident of Chicago.

9.      The City of Chicago (the "City") is a municipal corporation, as defined in the Illinois Municipal Code, 65 ILCS 5/1-1-2(1). The City is located within the Northern District of Illinois.

10.      The City is organized into various departments, including the Chicago Police Department ("CPD"). The City owns, operates, manages, directs, and controls CPD.

11.      Officer Khalil Muhammad is an employee of CPD.

**FACTS RELEVANT TO ALL COUNTS**

12.      Ricky is African American. He was born with intellectual and developmental disabilities. While he is now 19-years old, he functions at the cognitive level of a child, and he has difficulty communicating. Ricky looks much younger than his age and his disabilities are immediately recognizable.

13.      Ricky lives with a caretaker on the South Side of Chicago. At approximately 1:25 a.m. on August 13, 2017, Ricky's caretaker checked on him in his room and he was not there, having snuck out of the house.

14.      At approximately 1:30 a.m., Ricky's caretaker contacted CPD and reported Ricky as missing.

15.      At approximately 2:00 a.m., police officers arrived at Ricky's home, at which time Ricky's caretaker completed a missing person report, and informed the officers of Ricky's disabilities.

16.     After sneaking out of the house, Ricky skipped and ran around his neighborhood, often singing to himself. He was dressed in shorts, a short sleeve shirt and sneakers. Ricky was unarmed and did not engage in any criminal activity. Multiple surveillance cameras captured Ricky harmlessly roaming around his neighborhood.

17.     Shortly before 5:00 a.m., Officer Muhammad spotted Ricky. Office Muhammad was off duty and driving his own truck. Without any reasonable suspicion of criminal activity, Officer Muhammad began chasing Ricky with his truck.

18.     Officer Muhammad drove his truck up onto the sidewalk only a few feet from Ricky. Ricky was reasonably scared by Officer Muhammad's aggressive approach, and ran away. Officer Muhammad continued to chase Ricky in his truck.

19.     Ricky eventually stopped running and stood in the front yard of a house at, or near, 10947 S. Hermosa Avenue.

20.     As Ricky stood motionless, Officer Muhammad drove up in his truck and stopped in the middle of the street, approximately 20 feet from Ricky. Seconds later, while sitting in the driver's seat of his truck, Officer Muhammad opened fire on Ricky with his service weapon, a Glock 19, hitting Ricky in his chest and arm.

21.     When Officer Muhammad opened fire, Ricky was standing almost perfectly still, facing Officer Muhammad's truck, with his hands at his sides. Ricky did not make any aggressive moves toward Officer Muhammad.

22.     After being shot, Ricky ran away again, and Officer Muhammad continued to chase after him in his truck. When Officer Muhammad caught up with Ricky, he ordered Ricky to lay face first on the ground, and Ricky complied.

23.     Officer Muhammad took custody of Ricky, called 911, and requested an ambulance.

24.     In his recorded call to 911, Officer Muhammad falsely claimed that he "had to" shoot Ricky because Ricky had "walked-up" on his truck, and tried to pull a gun on him. Officer Muhammad also stated in his report to CPD that he shot Ricky because he was in imminent threat of battery.

25.     Following the shooting, Police Superintendent Eddie Johnson stated in a news conference that Officer Muhammad had questioned Ricky, who became "elusive and unresponsive." He further stated that "Officer Muhammad continued to question the man, and the encounter escalated in some way which prompted the off-duty officer to discharge his weapon." *See* August 15, 2017, Chicago Tribune memorialization of Police Superintendent Eddie Johnson's press conference (Exhibit A).

26.     These accounts are false. The shooting was recorded by a security camera. The video clearly shows Ricky, unarmed and standing harmlessly 20 feet from Officer Muhammad's truck when he was shot, not approaching or threating Officer Muhammad in any way. There was no "escalation" between Ricky and Officer Muhammad. Officer Muhammad simply shot Ricky multiple times while he stood far away posing no threat.

27.     Even though the CPD has videos of the events that took place that morning, the CPD and City have not found the shooting to be unjustified and, upon information and belief, Officer Muhammad is still a member of the Chicago police force

### CPD's Pattern of Abuse

28.     Prior to and at the time of Ricky's shooting, CPD was engaged in a widespread pattern of using unlawful force in violation of individual constitutional rights, especially against minorities and those with mental handicaps. This Pattern has been allowed and promoted by the City. (*See* Exhibits B and C).

### COUNT I – 42 U.S.C. § 1983
### EXCESSIVE FORCE (BOTH DEFENDANTS)

29.     Ricky realleges each of the proceeding paragraphs as if fully stated herein.

30.     During the events at issue, Officer Muhammad was acting under the color of law and within the scope of his employment. Officer Muhammad was in uniform, carried his CPD service weapon, and claims he was exercising his official duties as a CPD officer investigating what he alleges was a suspicious person.

31.     Officer Muhammad's shooting of Ricky constitutes excessive force in violation of the United States Constitution.

32.     Officer Muhammad's conduct described herein was objectively unreasonable and was undertaken intentionally with willful indifference to Ricky's constitutional rights.

33. The misconduct described herein was undertaken with malice, willfulness, and reckless indifference to the rights of others.

34. The misconduct described herein was undertaken pursuant to the policy and practice of CPD and City in that:

    a. CPD directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference.

    b. The City has failed to provide training to the majority of its officers regarding how to recognize developmental disabilities in civilians, and how to interact with such civilians. To the extent the City has attempted to train a minority of its officers in interacting with people with mental disability, the training has been inadequate.

    c. The City facilitates the type of misconduct at issue here by failing to adequately investigate, punish, and discipline instances of similar misconduct, including by delaying investigations into allegations of misconduct, thereby leading officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Ricky.

    d. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of CPD abuse citizens in a manner similar

to that alleged by Ricky on a frequent basis, while the City makes findings of wrongdoing in a disproportionally small number of cases.

e. City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in CPD. Officers routinely fail to report instances of misconduct and lie to protect each other from punishment, and are not disciplined for doing so.

f. The City has failed to act to remedy patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

35. As a result of Officer Muhammad's unjustified and excessive use of force and the policy and practice of the City, Ricky has suffered bodily injury, and pain and suffering, including emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendants, City of Chicago, and Officer Khalil Muhammad, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendants, as well as any other relief this Court deems just and appropriate.

**COUNT II – 42 U.S.C. § 1983**
**FALSE ARREST/UNLAWFUL DETENTION (BOTH DEFENDANTS)**

36. Ricky realleges each of the proceeding paragraphs as if fully stated herein.

37. Officer Muhammad falsely arrested and unlawfully detained Ricky without justification and without probable cause.

38.    The misconduct described herein was undertaken with malice, willfulness, and reckless indifference to the rights of others.

39.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Ricky's constitutional rights.

40.    The misconduct described herein was undertaken pursuant to the policy and practice of CPD, as stated in paragraph 34 of this Complaint.

41.    As a result of the unjustified violation of Ricky's rights by Officer Muhammad, undertaken pursuant to the City's policy and practices, Ricky suffered bodily injury, and pain and suffering, including severe emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendants, City of Chicago, and Officer Khalil Muhammad, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendants, as well as any other relief this Court deems just and appropriate.

## COUNT III -- 42 U.S.C. § 1983
## MONELL CLAIM (CITY OF CHICAGO)

42.    Ricky realleges each of the proceeding paragraphs as if fully stated herein.

43.    The misconduct of Officer Muhammad described herein was undertaken pursuant to the policy, practices, and customs of CPD, and was ratified by the policymakers for the City with final policymaking authority. These practices included the failure to adequately train and supervise CPD officers, failure to implement

9

policies and practices to prevent the type of constitutional violations described in this Complaint, and failure to discipline officers who engaged in constitutional violations of the type alleged in this Complaint.

44.     The policies and practices described in this Complaint were maintained and implemented by the City with deliberate indifference to Ricky's constitutional rights.

45.     As a direct and proximate result of the City's actions, Ricky suffered bodily injury, and pain and suffering, including severe emotional distress.

46.     The City is therefore liable for the misconduct of Officer Muhammad.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendant, City of Chicago, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendant, as well as any other relief this Court deems just and appropriate.

### COUNT IV – 42 U.S.C. § 12132
### VIOLATION OF AMERICANS WITH DISABILITIES ACT "ADA" (CITY OF CHICAGO)

47.     Ricky alleges and each of the proceeding paragraphs as if fully stated herein.

48.     Ricky qualifies for protection as provide for by the ADA because of his intellectual and developmental delays.

49.     The City is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1)(a), (b).

10

50.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132

51.     The regulation implementing Title II of the ADA provides that:

-   A public entity may not, directly or through contractual or other arrangements, utilize criteria of methods of administration – (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3).

-   A public entity shall make reasonable modifications to policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 5.130(b)(7).

52.     In violation of Title II of the ADA, Ricky was discriminated against on the basis of his disability, denied reasonable modifications of polices, practices and procedures, and denied the services and benefits of the City's emergency response and policing systems because the City has failed to adequately train and supervise

CPD officers to respond to situations involving individuals with intellectual and developmental delay.

53.     The City has been deliberately indifferent to the obvious discrimination of the CPD officers, and the need for more and different policies, practices, and procedures to prevent the violation of the rights of individuals with disabilities.

54.     Ricky was denied the services and benefits of the CPD because the City failed to supervise and discipline officers' interacting with individuals that exhibit signs and symptoms of intellectual and developmental disabilities.

55.     As a direct and proximate result of the City's violation of the ADA, Ricky sustained bodily injuries, and pain and suffering, including emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendant, City of Chicago, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendant, as well as any other relief this Court deems just and appropriate.

## COUNT V – STATE LAW CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (BOTH DEFENDANTS)

56.     Ricky realleges each of the proceeding paragraphs as if fully stated herein.

57.     Officer Muhammad engaged in extreme and outrageous behavior in chasing and shooting Ricky.

58.     By his behavior, Officer Muhammad intended to inflict, or knew that there was a high probability of inflicting, severe emotional distress upon Ricky.

12

59.     Officer Muhammad's actions were undertaken intentionally, with malice and reckless indifference to Ricky's rights.

60.     As a result of the unjustified violation of Ricky's rights by Officer Muhammad, undertaken pursuant to the City's policy and practices as described herein, Ricky did in fact suffer severe emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendants, City of Chicago, and Officer Khalil Muhammad, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against Defendants, as well as any other relief this Court deems just and appropriate.

## COUNT VI – STATE LAW CLAIM
## ASSAULT AND BATTERY (BOTH DEFENDANTS)

61.     Ricky realleges each of the proceeding paragraphs as if fully stated herein.

62.     The conduct of Officer Muhamad, acting under the color of law and within the scope of his employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, and proximately causing Ricky bodily injuries and apprehension of injury.

63.     The misconduct described herein was objectively unreasonable and was undertaken intentionally with willful indifference to Ricky's constitutional rights.

64.     The misconduct described herein was undertaken with malice, willfulness, and reckless indifference to the rights of others.

As a result of the shooting by Officer Muhammad, undertaken pursuant to the City's policy and practice as described herein, Ricky sustained bodily injuries, pain and suffering, including, but not limited to, a reasonable apprehension of great bodily harm and severe emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendants, City of Chicago, and Officer Khalil Muhammad, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendants, as well as any other relief this Court deems just and appropriate.

## COUNT VII – STATE LAW CLAIM
## FALSE ARREST AND IMPRISONMENT (BOTH DEFENDANTS)

65. Ricky realleges each of the proceeding paragraphs as if fully stated herein.

66. Ricky was unlawfully restrained despite Officer Muhammad's knowledge that there was no probable cause for doing so.

67. The actions of Officer Muhammad were undertaken intentionally, with malice and reckless indifference to Ricky's constitutional rights and to the rights of others.

68. As a result of the wrongful infringement of Ricky's rights, undertaken pursuant to the City's policy and practice as described herein, Ricky suffered bodily injury, and pain and suffering, including emotional distress.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against Defendants, City of Chicago, and Officer Khalil

Muhammad, awarding compensatory damages, attorneys' fees, costs and punitive damages against defendants, as well as any other relief this Court deems just and appropriate.

## COUNT VIII – STATE LAW CLAIM
## RESPONDEAT SUPERIOR (CITY OF CHICAGO)

69. Ricky realleges each of the proceeding paragraphs as if fully stated herein.

70. In committing the acts set forth herein, Officer Muhammad was a member and agent of CPD, acting at all relevant times within the scope of his employment.

71. The City is liable as principal for all torts committed by Officer Muhammad against Ricky.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendant, City of Chicago, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendant, as well as any other relief this Court deems just and appropriate.

## COUNT IX – STATE LAW CLAIM
## INDEMNIFICATION (CITY OF CHICAGO)

72. Ricky realleges each of the proceeding paragraphs as if fully stated herein.

73. Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based on the employee's misconduct committed within the scope of their employment.

74. Officer Muhammad was and is an employee of CPD, an agency of the City, and he acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendant, City of Chicago, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive damages against defendants, as well as any other relief this Court deems just and appropriate.

## COUNT X – STATE LAW CLAIM
## NEGLIGENT HIRING AND RETENTION (CITY OF CHICAGO)

75. Ricky realleges each of the proceeding paragraphs as if fully stated herein.

76. On information and belief, the City knew or should have known that Officer Muhammad was unfit for his position with CPD, so much so, as to create a danger of harm to third persons.

77. Officer Muhammad's unfitness proximately caused Ricky's injuries.

WHEREFORE, RICARDO HAYES, respectfully request that this Court enter judgment in his favor and against defendant, City of Chicago, awarding, to the extent provided for by law, compensatory damages, attorneys' fees, costs and punitive

damages against Defendants, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Ricardo Hayes hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

Respectfully submitted,

By: S/ Gabriel Hardy

Gabriel Hardy (ARDC No. 6229405)
Goodman Tovrov Hardy & Johnson, LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312) 752-4756
Fax:   (312) 264-2535 (Fax)
Email: ghardy@goodtov.com

Adam Goodman (ARDC No. 6229333)
Goodman Tovrov Hardy & Johnson, LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312) 238-9592
Fax:   (312) 264-2535 (Fax)
Email: agoodman@goodtov.com